AGNES E. STEVENSON, Respondent, *v.* SECOND AVENUE RAILROAD COMPANY, Appellant.

*Negligence — street car driver turning his horses so suddenly that the car is forced off the track — a verdict cannot be sustained upon the ground that this was presumptively negligent where the case was not submitted to the jury upon that theory.*

In an action brought to recover damages for the loss of services of the plaintiff's son, who, while a passenger in one of the defendant's street cars, was injured through its alleged negligence, there was no claim or evidence tending to show that the tracks of the defendant were defective, or that there was carelessness in the operation of the car, other than the act of the driver in turning his horses suddenly to the right, which forced the front wheels of the car from the track and threw the passengers into confusion, one of whom fell upon the plaintiff's son and injured him.

The court charged the jury that the mere fact that the car left the track, with nothing to explain it, raised no presumption of negligence, to which charge the plaintiff took no exception, thus acquiescing in the theory upon which the case was submitted to the jury, namely, that the driver turned his horses for the purpose of avoiding a collision.

*Held*, that a verdict in favor of the plaintiff could not be sustained upon the theory that the true rule of law to be applied to the case was that the happening of the accident in the manner detailed raised a presumption of negligence which the defendant was called upon to explain, as, upon the theory upon which the case was submitted to the jury, the only fair inference to be drawn by the jury would have been one favorable to the defendant.

RUMSEY and PATTERSON, JJ., dissented.

APPEAL by the defendant, the Second Avenue Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of March, 1898, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 23d day of March, 1898, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover for the loss of services of the plaintiff's son, George Stevenson, a boy of fourteen years, resulting from injuries alleged to have been sustained by him through the negligence of the defendant while he was a passenger on one of the defendant's horse cars. Accompanied by his married sister, Mrs. Jenkins, the boy boarded a Second avenue car going north at Thirty-fourth street, and, upon entering the car, took a seat on the left-

hand side, up near the front. The car was crowded, and there were six or seven people standing in the aisle. The car proceeded north until it reached Sixty-fourth street, where the accident occurred, the circumstances of which are detailed by Mrs. Jenkins as follows: " There was a vehicle of some kind, a horse and carriage, on the track in front, and the driver in pulling out, he pulled out to the right. * * * All of a sudden we heard a rumbling noise and the car went smash into the pole, and with that it threw the passengers that were standing up onto those who were sitting down. And there was a man fell on my brother." In answer to a question by a juryman as to whether there was any truck or car in front of the car in which they were riding, Mrs. Jenkins said : " There was a wagon in front." And upon cross-examination, on being asked, " Did you see what sort of vehicle this was that was on the track or got on the track in front of this driver that he pulled his horses out for," she answered : " It was a coach, I believe. I should judge an ordinary hack such as we have around here, a coupé. I do not think it was a buggy, because there was a team of horses. I did not notice where it came on the track in front of the driver." And continuing, she said : " I did not notice this coach before I got to 64th street at all. Not until we heard the rumbling noise of the accident. * * * It stood to the side of the track. It stood over by the other side of the track. I mean the right-hand side of our track, pulled out to the east side. Pulled out in the same direction the driver of the car pulled out his horses." And in answer to the question as to whether the coach or carriage which was in front of the car did not drive rapidly up the avenue past the car and swing suddenly to the right and in front of the horses of the driver, she answered : " I don't know."

On the part of the defendant, we have the testimony of the conductor of the car, as follows : " At 62d street I remarked two men in a buggy ; a one-horse buggy, driving rapidly uptown on the down-town track, and all of a sudden, coming near 63d street, they turned to the right, cutting off our team and causing my driver to switch to the right. I watched them as they drove up past me. They attracted my attention by the way they were driving." In answer to the question, " Did you or did you not see this buggy and horse swing across in front of the horses of your car ? " he said, " Yes ; " and testified

further: "I was watching the buggy; on account of it driving so fast it attracted my attention. I did not see what my driver did when the horse and buggy cut him out, only that our team swerved to the right. * * * I thought the horse and buggy was in collision between the elevated posts, and I went to look for them and they were up to 65th street, two blocks away from us, and still driving rapidly. One of my horses fell down at the base of the elevated pillar. The front wheels of my car were off the track. I could not exactly say how far off the track, but the hind wheels were on and the front wheels were off. The front dashboard of my car had not come in contact, or any of the front part of my car come in contact with the elevated pillar. * * * I could not exactly tell how near that base of the elevated pillar the front dashboard was. It was so near that one of the horses was not able to stand with the base of the elevated pillar and he fell down."

Evidence was given that the defendant sought to produce the driver as a witness, but that he could not be found. The conductor stated that he was what was known as an "extra driver," and in answer to a juror as to whether the driver was a green man, testified, "He didn't appear to me to be a green man," and added, in response to another question, "I don't exactly know how long he had been working on any railway; I think I seen him on some road before; I could not exactly say on what road I saw him before, or when; I think I saw him."

There was considerable evidence given as to the extent of the injuries inflicted on the boy, and the amount of nursing and care bestowed by the mother during his illness. Evidence presented as to the condition of the boy's health before the accident showed that he had been treated when he was eleven years old for articular rheumatism and valvular disease of the heart, from the former of which he recovered, but remained afflicted with the latter. He had been able to go to school only intermittently. At the time of the accident the boy was learning the printer's trade, and earned three dollars and fifty cents per week.

In charging the jury the learned trial judge said: "I charge you, gentlemen, that the mere fact that the defendant's car left the track, with nothing to explain the same, raises no presumption of negligence on the part of the defendant, and is insufficient to support a

verdict against the defendant. If you are left in doubt as to why the defendant's car left the track you must find a verdict for the defendant. If you believe the driver of the defendant's car swung his horses to avoid a collision with a vehicle upon the track in front of him, and that his act in so doing caused the car to leave the track, there is no negligence shown on the part of the defendant, and you must find a verdict for the defendant. * * * If, on a review of all the evidence, you find that the defendant's driver suddenly swung his horses to the right to avoid collision with a team which had suddenly turned in on the track in front of him, and thereby caused the car to leave the track, I charge you that such an act would not be negligence on defendant's part." The judge then charged the jury generally that a recovery could be had only for such injuries as were due solely to the negligence of the defendant.

The jury found a verdict for the sum of $5,000 for the plaintiff, and from the judgment entered thereon and the order denying a motion for a new trial this appeal is taken.

*Charles F. Brown,* for the appellant.

*Abraham Gruber,* for the respondent.

O'BRIEN, J. :

The amount of damages awarded, when we take into consideration the boy's age, his earning capacity, and the fact that he was not in rugged health, seems more than a fair compensation to the plaintiff for the loss of services of her son due to the injuries received by him while he was a passenger on the defendant's car. Although we think the sum excessive, we might, by reducing the verdict to a proper amount, permit the judgment to stand, were it in all other respects right. We think, however, that the learned trial judge, in applying the rules of law to the facts, committed errors which are fatal to the judgment.

There was no claim or evidence tending to show that the tracks were defective, or that there was carelessness in the operation of the car, other than the act of the driver in turning his horses suddenly to the right which forced the front wheels of the car from the track and threw the passengers into confusion, one of whom falling on the plaintiff's son caused the injuries for which the recovery is

sought. The most favorable view to the plaintiff that can be taken of the case, is that the act of the driver in suddenly turning his horses and derailing the car is *prima facie* evidence of negligence, and cast upon the defendant the burden of explaining such an unusual occurrence; and that, with such explanation as was offered, was properly submitted to the jury. The learned trial judge, however, did not submit the case to the jury upon any such theory, but directly charged them that the mere fact that the car left the track, with nothing to explain the same, raised no presumption of negligence. It is thus apparent that the trial judge did not concur in the plaintiff's view that the mere happening of the accident in the manner described raised a presumption of negligence.

There was, however, another theory deducible from the testimony of both Mrs. Jenkins and the conductor, and one which would explain the accident, namely, that the act of the driver in pulling his horses to the right was the effect of an effort on his part to avoid a collision with a buggy or vehicle of some sort which came on the track in front of the car. According to the conductor, this vehicle, which was going north on the southerly track, passed the car and suddenly turned in upon the northerly track directly in front of the car horses. The court, however, expressly instructed the jury that if the conduct of the driver was actuated by a desire to avoid a collision with a vehicle in front, then their verdict must be for the defendant.

The evidence tended to establish that a desire on the part of the driver to avoid a collision was the cause of the accident; and the court did not intimate or suggest that the jury might speculate or guess that the driver had unnecessarily or without any sufficient reason pulled his horses to the right and thus thrown the car from the track. The plaintiff, notwithstanding, contends that, upon the evidence, the jury might have inferred that there was no good reason or cause for the driver's pulling his horses to the right, and, therefore, that the question of the defendant's negligence was one for the jury. This contention is of no avail for the reason that the trial judge, as already pointed out, presented the case to the jury on no such theory. The charge of the judge as made must be regarded as the law of the case; and as the plaintiff at the trial took no exception to it, he thus acquiesced in the theory upon which the case was

submitted to the jury, namely, that the driver turned his horses for the purpose of avoiding a collision. Such an act was expressly charged not to be negligent. What in effect the respondent now contends for is, that the true rule of law to be applied is that the happening of the accident in the manner detailed raises a presumption of negligence which the defendant was called upon to explain, and which presumption and explanation should have been submitted to the jury. Assuming this to be a correct proposition of law, it is what the judge expressly refused to charge; and we are confronted with a record from which it appears that, upon the theory on which the case was submitted, the only fair inference to be drawn by the jury should have been favorable to the defendant.

We might well stop the discussion here, were it not that some criticism is made of a decision of this court in *Hastings* v. *Central Crosstown Railroad Co.* (7 App. Div. 312). The respondent cites numerous decisions in support of the proposition for which she contends. Among them is the case of *Murphy* v. *Coney Island & Brooklyn Railroad Co.* (36 Hun, 199), a case of the derailment of a horse car, wherein the court says: "The happening of an accident which in the usual and ordinary course of things would not happen with proper care, casts the burden on the defendant of explaining the accident so as to relieve itself from liability." (See, also, *Pollock* v. *Brooklyn & Crosstown R. R. Co.*, 15 N. Y. Supp. 189; *Farrell* v. *Houston & West St. & Pavonia Ferry R. Co.*, 4 id. 597; *Griffith* v. *Utica & M. R. Co.*, 17 id. 692.)

It is suggested that, contrary to these decisions, we held in the *Hastings Case* (*supra*) that the mere derailment of a street car is not sufficient proof, *prima facie*, of negligence. We did not so decide. What was there said in regard to the derailment of a street car had reference to the claim made by counsel that the ruling in *Edgerton* v. *N. Y. & H. R. R. Co.* (39 N. Y. 227) was applicable, namely, that proof that a car left the track is *prima facie* evidence of negligence. The criticism of this court was as to the pertinency of the authority, and what followed was merely to illustrate why the rule as to railroads operated by steam should not in every case and as a matter of law be applied to a street car leaving the track. In the *Hastings* case, as well as in the *Pollock Case* (*supra*), there was evidence, not only of the derailment, but also as to its cause. In the

*Hastings* case it appeared that the driver, when in a dangerous situation, struck his horses with a whip, and in the *Pollock* case, that the car was thrown from the track on a curve at the time when the driver was looking at some boys who were quarrelling in the street, and there was thus support for the theory that the car jumped the track in turning the curve " for the want of proper guidance of the horse."

We think the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred ; RUMSEY and PATTERSON, JJ., dissented.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.