HOLLAHAN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

1. STREET RAILWAYS—CAR JUMPING TRACK—NEGLIGENCE—QUESTION FOR JURY.
    In an action for personal injuries sustained by plaintiff by being thrown from a street car on its jumping the track, where there was evidence that the car at the time was going at a "pretty good rate," and that the accident happened at a point where there were side tracks leading into the car stables, the question of defendant's negligence was for the jury.

2. SAME—BURDEN OF PROOF.
    In an action for personal injuries sustained by plaintiff by his being thrown from a street car on its jumping the track, though plaintiff made a prima facie case by proof that the car was going at a "pretty good rate," and that the accident happened at a point where there were side tracks leading into the car stable, the burden nevertheless remained on him, when the proof was all in, to show negligence on the part of the defendant.

Appeal from trial term, New York county.

Action by William F. Hollahan against the Metropolitan Street Railway Company. Judgment for plaintiff, and defendant appeals. Reversed.

The plaintiff seeks to recover for personal injuries which he sustained by being thrown into the street from the front platform of the defendant's downtown First avenue horse car owing to its suddenly leaving the track at a point opposite the car stables between 97th and 98th streets on the morning of April 6, 1899. He boarded the car at 121st street, and remained on the front platform after the conductor had taken his fare, in order to smoke, and stood on the left side of the driver, with his right hand on the railing behind him. He says: "The car was going at a pretty good rate of speed. As I approached 97th street, or got at 97th street and First avenue, the car suddenly jumped the track; I don't know what was the cause of it; and the jump went over in that direction; and when we swung, of course, with the jerking he had of the team, it threw me off on the other side. When I say the car was slewed over to one side, I mean the west side; that is, the west side of the street. That is on the right hand side coming down. I was thrown over on the east side; that is, the left hand side coming down. I was thrown over to the uptown track, and, the car coming up, I had to roll out of the way. * * * I was not knocked unconscious, but helpless. * * * The depot is right where the accident occurred. * * * I landed in the middle of the other track." A physician testified that the plaintiff had sustained a Potts fracture, the tip end of the inner and outer bone having been fractured, the ligaments of the arch of the foot torn, and general bruises inflicted, and the movement of the foot restricted permanently and weakened. A truckman, who was driving up the avenue, and near 97th street, at the time of the accident, testified that the car was slewed over toward the stables, and he heard it jumping on the stones a good way off the rails, and both wheels were out, and the car was between the tracks or rails, and it went about six or seven feet before it was brought to a standstill. He further said: "The stables are right at the point where the accident occurred; that is, the car stables. There were tracks leading out from the main track into the doors of the stables. I believe they run all the way down the length of the block, these tracks that ran in." The plaintiff having rested, the defendant moved to dismiss the complaint, which motion was denied, and exception taken. For the defendant the conductor of the car then testified that the car went off the track, and he saw the man fall, but that he did not know the cause of its going off the track, and the first he knew was that it jumped the track. He further testified that there were no other passengers on the car. The defendant also gave evidence that the driver of the car is now dead. Motion

to dismiss was renewed and denied, and exception taken. The jury returned a verdict for the plaintiff in the sum of $1,500, and from the judgment so entered the defendant appeals.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Theodore H. Lord, for appellant.
John Vernon Bouvier, Jr., for respondent.

O'BRIEN, J. The appellant contends that the court erred in the theory upon which it sent the issues to the jury, as appears particularly from various portions of the charge to which exceptions were taken. Without discussing these various exceptions at length, it is sufficient to say that the question which they present was raised upon the motion made to dismiss as to whether, the precise cause of the derailment of the car not being shown, the jury might infer from the unusual nature of the accident that the defendant was negligent. Both plaintiff's and defendant's witnesses failed to ascribe the accident to any specific cause, and, against the defendant's objection and exception, the jury was permitted to and did find that the circumstances existing at the time of the accident warranted the inference of negligence on the part of the defendant. It is now insisted that the record does not contain evidence sufficient to support any such finding. The principles which have been applied in the disposition of somewhat similar cases are discussed in the following authorities: In Hastings v. Railroad Co., 7 App. Div. 312, 40 N. Y. Supp. 93, it was said, referring to the rule followed in Edgerton v. Railroad Co., 39 N. Y. 227, that negligence is not to be imputed to defendant from the mere fact that the car left the track. "It would be grossly unjust to extend that rule to street railway companies, which have not exclusive control over their tracks. * * * But there was in the testimony of the plaintiff, if it is to be believed, very positive evidence of negligence on the part of the driver, and it is upon the theory that his statement may be true that the question of negligence should have been submitted to the jury." This positive negligence was referred to in Stevenson v. Railroad Co., 35 App. Div. 474, 54 N. Y. Supp. 815, wherein it was said: "In the Hastings Case, as well as the Pollock Case (Sup.) 15 N. Y. Supp. 189, there was evidence not only of derailment, but also as to its cause. In the Hastings Case it appeared that the driver, when in a dangerous situation, struck his horses with a whip, and in the Pollock Case that the car was drawn from the track at a curve at a time when the driver was looking at some boys who were quarreling in the street, and there was thus support for the theory that the car jumped the track * * * for the want of proper guidance." We are thus brought back to the facts established by the evidence in the case at bar that the car jumped the track and left the rails at a time when it was going at a "pretty good rate" at a place opposite the First avenue car stables, and at a point where there were tracks leading out from the main track into the doors of the stable. Although it might be said that the evidence is not strong and highly satisfactory in support of the inference of negligence which it was within the province of the jury to draw from the

facts set forth, we still think it was sufficient. It is true that the railroad has not a monopoly of that part of the street upon which the rails are laid, nor the right to exclude others from the use thereof, yet it has the paramount right and the exclusive management of its own cars, and control for the purpose of laying and keeping in repair its own rails, and the corresponding duty rests upon it of seeing that the cars are properly managed and that the tracks are at all times reasonably safe. This duty involves the obligation, further, of operating the cars with reasonable care so as to avoid at dangerous points, such as at curves or intersections with other tracks, accidents which are likely to happen from the negligent operation of the cars. The tracks are constructed for the purpose of having the cars remain upon them, and experience proves that they are well adapted for that purpose; and it would not only be unusual and extraordinary, but highly improbable, that a derailment would occur without some intervening cause. It cannot be assumed, therefore, with respect to this accident, that in the ordinary operation of the car over the tracks it would leave them without the car having met with some obstacle on the track, or being dragged or thrown therefrom by some superior force. The proof eliminates the latter, and there is no suggestion in the record that there was any stone or any obstruction which impeded the car's progress, other than the switch rails, which, at the point of the accident, ran from the main track into the car stables. The care of these switches was as much under the defendant's control as any other portion of the tracks; and if the further fact had been established that the accident was actually caused by the switch being open so as to change the direction of the car from the main to the branch track, there would be no room for discussion but that with this additional evidence it would be clearly a question for the jury to determine as to whether or not the accident was due to the negligence of the defendant in not properly looking after the switch track so as to prevent such an accident. With that fact out, however, and with no evidence to show that the accident was caused in any other way than by contact with the switches which there existed, was not the defendant's negligence properly a question for the determination of the jury? Though close, we are inclined to think it was, and for the reason that, regard being had to the circumstances and the character of the occurrence, the inference that the accident was due to the switch track, as the intervening cause, was both a direct and natural one. Upon the main question, therefore,—as to whether there was sufficient evidence to warrant the submission to the jury of whether or not the defendant was negligent,—we concur in the view taken by the learned trial judge, and think that the refusal to dismiss the complaint or direct a verdict for the defendant was proper.

This disposes of the contention upon which reliance was principally placed for a reversal, and for failure to press other exceptions which appear in the record we might assume that the appellant, if unsuccessful upon this main question, which relates to the plaintiff's right to recover at all, was not, on other grounds, overanxious to secure a reversal, which would merely result in a new trial. Considering the nature of the injuries and the amount of the verdict, which is small,

such an attitude is one which the appellant might properly have taken. We do not find, however, that the defendant has expressly waived any of the other exceptions, and, although not urged on the brief, we have no right to conclude that they are waived. We must, therefore, consider them. It is only necessary to discuss one of these exceptions, which, we think, is fatal to the judgment. The plaintiff impressed upon the court successfully the view that with the facts which we have enumerated as having been established by the evidence a prima facie case had been made out, and the burden of proof was then shifted, and thereafter it rested "upon the defendant to prove that the accident happened without its fault or neglect." Upon this appeal the respondent insists that that is a correct proposition of law, and refers to several cases in which similar language finds support. It is unnecessary, however, to discuss the question, for, though formerly a debatable one, it has been finally placed at rest in Kay v. Railway Co., 163 N. Y. 453, 57 N. E. 752, wherein it was said:

"When a party alleges the existence of a fact as a basis for a cause of action or defense, the burden is always upon the party who alleges the fact to establish it by proof. The onus probandi is upon him throughout. In the case at bar the plaintiff made out her cause of action prima facie by the aid of a legal presumption, but, when the proof was all in, the burden of proof had not shifted, but was still upon the plaintiff."

For the error in the charge, therefore, the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.